CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, A
CORPORATION, APPELLEE, V. COUNTY OF BOX BUTTE,
NEBRASKA, APPELLANT.

90 N. W. 2d 72

Filed May 9, 1958. No. 34353.

*Clark S. Nichols,* for appellant.

*J. W. Weingarten, W. P. Loomis,* and *Stubbs & Metz,*
for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action to recover the excessive and void
portion of a tax paid to the county, it being alleged that
the tax assessed and collected is in excess of the amount

authorized by section 77-1104, R. S. Supp., 1955. The defendant asserts that the tax levied is not in excess of the amount authorized, and that, in any event, Laws 1953, chapter 290, page 985, codified as sections 77-1104 and 77-1105, R. S. Supp., 1955, is unconstitutional and void in that it violates Article III, section 1, Article II, section 1, Article III, section 14, and Article III, section 18, of the Nebraska Constitution. The trial court found for the plaintiff and the defendant appealed.

The case involves an interpretation of section 77-1104, R. S. Supp., 1955, which provides in part: "Until two years after June 13, 1953, it shall be unlawful for * * * any county board * * * to fix or make any levy upon the assessed value of all the taxable property * * * within a political subdivision * * *, except intangible property and except as otherwise prescribed in this section and section 77-1105, that will increase the revenue produced by such levy in excess of five per cent of the revenue from such a tax levy by * * * any political subdivision, * * * for the preceding year, except * * * (7) where any political subdivision * * * which was subject to a statutory levy limitation in 1952, but in that year did not make the maximum levy permitted by law, nothing in this section * * * shall prevent it in succeeding years from raising the amount of revenue, plus five per cent, that would have been raised in 1952 had the maximum levy permitted by law been used; * * *."

It is the contention of the plaintiff that the restriction contained in the foregoing statute applies to each fund of the general levy which the county is authorized to make. The defendant contends that the statute applies to the total amount levied by the county after excluding the exceptions contained in the act. If plaintiff's interpretation of the act is correct, the levies for general purposes in 1953 and 1954 are admittedly in excess of the amounts authorized by section 77-1104, R. S. Supp., 1955. If the interpretation of the defend-

ant is correct, the levy made was within authorized limits.

On January 9, 1953, this court released its opinion in Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469. The effect of this opinion was to reiterate that all property in the state which was not expressly exempt was subject to taxation and was to be valued and assessed at its actual value. The evidence recited in the opinion showed that property had been equalized at less than actual value. A bill was immediately introduced into the Legislature which became the statutory provisions before us for interpretation. The purpose of the bill as shown by the statement of the Revenue Committee, which accompanied the introduction of the bill, was to prevent an abnormal return in taxes if property should be reassessed in such a way as to result in a marked increase in total assessed valuation. In the language of the Revenue Committee, the purpose of the proposed bill was to accomplish the following: "The result will be to keep the revenue at the same level as that of the preceding year and to relieve the natural fear which taxpayers have that if property is reassessed at a new and higher value that the tax will be greatly increased."

While it might be argued that the intent of the Legislature in enacting the bill was to limit the gross expenditures by counties for 2 years, except as to specifically excluded funds, we must look to the language used to determine the manner in which the restrictions were to be applied. The meaning hinges largely on the use of the words "any levy" contained in the act.

It seems clear to us that the use of the words "any levy" means the levies for particular funds rather than the one general levy. If the latter had been intended, the words "the levy" would have been used. The term "any levy" means any one of the number of levies and excludes the contention that the Legislature had in mind the single general levy which constitutes the

final act of the county board of equalization. The word "any" when so used has been generally defined to mean any one of an indefinite number. Iowa-Illinois Gas & Electric Co. v. City of Bettendorf, 241 Iowa 358, 41 N. W. 2d 1; Winslow v. Fleischner, 110 Ore. 554, 223 P. 922. This conclusion is further supported by the fact that certain funds were excluded from the operation of the statute by specific exceptions, which indicates an intention that the act would operate upon each particular fund making up the general levy, except those specifically excepted. We conclude that the position of the plaintiff is the correct one on this point.

The defendant contends that the statute is in violation of Article III, section 14, of the Nebraska Constitution which in part provides: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed."

The statute in question purports to be an independent act relating to revenue and taxation, and having for its purpose a restriction upon the amount of revenue which certain political subdivisions could raise for a period of 2 years from its effective date. In other words, the effect of the act is to limit the revenue of certain political subdivisions for 2 years to less than that theretofore permitted by the maximum amounts authorized. Prior to the enactment of sections 77-1104 and 77-1105, R. S. Supp., 1955, sections 77-1601 and 77-1603, R. R. S. 1943, provided the method to be followed in levying taxes. Section 77-1601 contained no limitations on the amount that could be levied. Section 77-1603 limited the amount that could be levied for ordinary county revenue to three mills on the dollar. Section 23-119, R. R. S. 1943, fixed the maximum limit which a county may levy for county purposes at five mills on the dollar actual valuation. The effect of the present act is to amend these particular provisions of the statute by fixing lesser maximums on some funds for a limited

period of time. If this is not an amendatory act, irrespective of its form, we fail to see how Article III, section 14, of the Constitution could ever have application. Its effect is to amend specific provisions of existing statutes without mentioning them in any way. The constitutional provision plainly requires that no law shall be amended without setting forth the section as amended, nor without repealing the amended section. No attempt was made to comply with this constitutional provision in the present act.

The fact that the legislation is cast in the form of an independent act is not a controlling feature. In determining questions of constitutionality, it is the substance and not the form that must be considered. In State ex rel. Beal v. Bauman, 126 Neb. 566, 254 N. W. 256, this court said: "In truth, the new enactment accomplished nothing of independent nature and its effect is wholly confined to 'changes' of what theretofore existed, with the evident intent of its authors that by the mingling of the new changes with old provisions a connected piece of legislation covering the same and original subject would result. But this is strictly a process of amendment, and no portion of this act has any other mission. It therefore must be regarded as nothing but an amendatory act and strictly within the scope of the constitutional limitation controlling in the enactment of statutes for an exclusively amendatory purpose: * * *." See, also, Sovereign v. State, 7 Neb. 409.

The act before us does not cover the whole subject or general scheme to which it relates. Its purpose was not comprehensive. The act is not complete in itself. It relates itself to other existing statutes dealing with the identical subject matter. It fails to meet the requirements of an independent act complete in itself. In Minier v. Burt County, 95 Neb. 473, 145 N. W. 977, a case very similar in principle was before the court. The court said: "Unquestionably the general subject of this legislation is to provide a method of raising

funds for the erection of public buildings, and the provision it makes is in addition and supplementary to the provisions already existing for that purpose. It therefore enlarges the means for raising such funds, and must be considered as amendatory of the former acts. If such legislation is permissible under the constitutional provision above quoted, it would be difficult to suggest any legislation that would be affected and controlled by that provision." Paraphrasing the language of the foregoing decision, we can well say in this case: It therefore limits the means for raising such funds, and must be considered as amendatory of the former acts.

Plaintiff relies primarily on Jensen v. Omaha Public Power Dist., 159 Neb. 277, 66 N. W. 2d 591, to sustain its contention that the statute is a complete and independent act. We think the plaintiff misconceives the holding of that case. It was therein said: "The act sets up a complete, independent, uniform eminent domain procedure." The language is significant. In that case the court was dealing with a new uniform act designed to supersede all former acts governing procedure in eminent domain cases. It was a complete act and covered the whole subject with which it dealt. Such legislation will ordinarily be sustained even though it may modify, change, or destroy the effect of other statutes. Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289. But in the case at bar the statute does not cover the whole subject to which it relates; it plainly limits existing statutes temporarily and is amendatory thereof.

The people of this state in enacting the Constitution saw fit to provide that in all cases the law as amended shall be given in full, with such reference to the old law as will clearly show for what the new law is substituted. The wisdom of the constitutional provision is not a matter for this court to determine. The constitutional limitation placed upon the Legislature in amending existing statutes must be followed, and where, as

here, its terms are not complied with, the act is void and of no force or effect.

Our conclusion is that, notwithstanding their form, because of their substance and sole purpose, sections 77-1104 and 77-1105, R. S. Supp., 1955, are adjudged to have been passed in contravention of Article III, section 14, of the Nebraska Constitution, and are void. This holding makes it unnecessary for us to determine other assignments of error raised by the appeal.

The judgment of the district court is reversed and the cause remanded with directions to dismiss plaintiff's petition.

REVERSED.